[Cite as *Shen v. Lam*, 2015-Ohio-3321.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

JESSIE SHEN,                              :          APPEAL NO. C-140607
                                                    TRIAL NO. A-1200792
    Plaintiff-Appellee,           :
                                                    *O P I N I O N.*
  vs.                                    :

PAUL MINH LAM,                            :

    Defendant-Appellant.          :


Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal:  August 19, 2015


*Dinsmore & Shohl LLP, Alex M. Triantafilou* and *Christen M. Steimle*, for Plaintiff-Appellee,


*The Farrish Law Firm* and *Kathleen C. King*, for Defendant-Appellant.


Please note:  this case has been removed from the accelerated calendar.

**DeWine, Judge.**

{¶1}  This is an appeal of an order striking an attorney's notice of appearance in a civil case.  The trial judge struck the notice because of evidence that one party had hired the attorney in a ploy to engineer the judge's recusal.  We find no abuse of discretion, so we uphold the decision of the trial court.

## I. Background

{¶2}  The subject of this appeal is an order entered on October 1, 2014, by Judge Leslie Ghiz striking a notice of appearance filed by attorney Kathy King.  The court's order came shortly after Ms. King filed her notice of appearance, and some two and a half years into a hotly-contested piece of litigation.

{¶3}  The underlying litigation is a personal-injury lawsuit.  In February 2012, Jesse Shen sued Paul Minh Lam, her former live-in boyfriend.  She alleged that Mr. Lam had beaten her severely and had stolen cash and credit cards from her.  Mr. Lam later filed counterclaims against Ms. Shen regarding some joint business dealings.  Attorney Herbert Haas represented Mr. Lam.

{¶4}  In July 2014, Ms. Shen filed a motion to bifurcate her claims from Mr. Lam's counterclaims, and Mr. Lam filed a jury demand.  The court held a hearing, after which it granted Ms. Shen's motion to bifurcate and struck Mr. Lam's jury demand as untimely.  Following the court's rulings in favor of Ms. Shen, Mr. Lam filed a motion for recusal, arguing that there was an appearance of bias on the part of the trial judge due to her friendship with Ms. Shen's attorney, Alex Triantafilou.  Accompanying the motion were affidavits of Mr. Haas and Mr. Lam, which included their observations of what they believed were the judge's biased interactions with Mr. Triantafilou.  Attached to Mr. Lam's affidavit was a copy of a newspaper article about a different case in which Judge

Ghiz had recused herself because Ms. King represented one of the parties. The same day that Mr. Lam filed the motion for recusal, Ms. King filed a notice of appearance in the case.

{¶5} Ms. Shen filed a response in opposition to Mr. Lam's motion for recusal. The response noted that the Ohio Supreme Court had exclusive jurisdiction over applications to remove a common pleas judge for bias and prejudice. *See* R.C. 2701.03. She also argued that there was nothing improper about the judge's interactions with Mr. Triantafilou.

{¶6} Ms. Shen's response included an affidavit from Mr. Triantafilou that called into question Mr. Lam's motives in hiring Ms. King. Mr. Triantafilou recounted a phone conversation that he had with Mr. Haas prior to Ms. King's notice of appearance. According to Mr. Triantafilou, Mr. Haas "suggested that his client could hire Kathy King as co-counsel" and "explained to me that Ms. King was counsel to Judge Ghiz's ex-husband and that this had caused Judge Ghiz to recuse herself in prior cases." Mr. Triantafilou also testified to receiving a subsequent voice mail from Mr. Haas in which Mr. Haas sought to "revisit" the issue of Judge Ghiz's recusal. In the voice mail, Mr. Haas said that "he was in a meeting with [his] client and his client is hiring co-counsel for [Mr. Haas], Kathy King." Mr. Triantafilou averred that he retained a copy of the voice mail.

{¶7} The court held a hearing on Mr. Lam's motion for recusal. Mr. Haas argued first. He set forth reasons why he believed that Judge Ghiz should recuse herself based on her interactions with Mr. Triantafilou. He also brought up Ms. King's appearance in the case and cited her appearance as a basis for recusal.

{¶8} After hearing argument from Mr. Triantafilou, the court orally announced its decision. The judge stated that she would deny the motion to disqualify her and

strike the notice of appearance filed by Ms. King. The court explained that it believed that the retention of Ms. King was a pretext to try to get her excused from the case. The court explained that it based this conclusion on the following: (1) the case's nearly three-year pendency at the time Ms. King was hired; (2) Mr. Triantafilou's uncontradicted sworn statements about Mr. Haas's communications to him relating to the hiring of Ms. King; and (3) the fact that a review of Ms. King's website indicated that she had no expertise in personal-injury or corporate work, and that her primary focus was in domestic relations matters. The court subsequently journalized an entry striking Ms. King's appearance.

## II. Final, appealable order?

{¶9} As a preliminary matter, we must address whether the court's order striking Ms. King's notice of appearance is a final appealable order. *See* R.C. 2505.02. Much of the case law regarding the question has analyzed it under R.C. 2505.02(B), which provides that an order is final—and thus subject to appellate review—when it is "[a]n order that affects a substantial right made in a special proceeding or upon a summary application in an action after judgment."

{¶10} That an order disqualifying counsel affects a "substantial right" has been settled for some time in Ohio. *See Russell v. Mercy Hosp.*, 15 Ohio St.3d 37, 472 N.E.2d 695 (1984). *See also Bernbaum v. Silverstein*, 62 Ohio St.2d 445, 446, 406 N.E.2d 532 (1980). Less clear is whether an order disqualifying counsel occurs in a special proceeding.

{¶11} In *Amato v. Gen. Motors Corp.*, 67 Ohio St.2d 253, 258, 423 N.E.2d 452 (1981), the Ohio Supreme Court prescribed balancing the "waste of judicial resources, resulting from the allowance of an appeal, with the need for immediate review because appeal after final judgment is not practicable" to determine whether an order occurred

4

in a special proceeding. Using this test, the Supreme Court held that a court's order disqualifying counsel was made in a "special proceeding" and thus was a final order. *Russell* at syllabus. *See Guccione v. Hustler Magazine, Inc.*, 17 Ohio St.3d 88, 90, 477 N.E.2d 630 (1985) (applying *Russell* to conclude that the denial of a motion to appear pro hac vice is a final appealable order). But *Amato* was overruled in *Polikoff v. Adam*, 67 Ohio St.3d 100, 616 N.E.2d 213 (1993), syllabus. *Polikoff* replaced *Amato's* balancing test with a bright-line rule based upon whether the action was recognized at common law or in equity and not specially created by statute. This holding was later codified in R.C. 2505.02(A)(2): " 'Special proceeding' means an action or proceeding that is specially created by statute and that prior to 1853 was not denoted as an action at law or a suit in equity."

{¶12} Under a plain reading of R.C. 2505.02(A)(2), it would seem evident that the order in this case was not entered in a special proceeding, and was thus not final. This is because the action in question—a personal-injury claim—was recognized at common law prior to 1853. Nonetheless, even after *Polikoff*, the Ohio Supreme Court has concluded that an order denying a motion to appear pro hac vice was a final appealable order. *See Klein v. Streicher*, 93 Ohio St.3d 446, 755 N.E.2d 880 (2001). In *Klein*, the court cited *Guccione* in support of its summary conclusion that the order was final even though *Guccione* had been decided pre-*Polikoff*. *Accord Kala v. Aluminum Smelting & Refining Co., Inc.*, 81 Ohio St.3d 1, 3, 688 N.E.2d 258 (1998) (concluding an order disqualifying counsel was a final appealable order), citing with approval *Stevens v. Grandview Hosp. & Med. Ctr.*, 2d Dist. Montgomery No. 14042, 1993 Ohio App. LEXIS 5092 (Oct. 20, 1993). While the definition of "special proceeding" in R.C. 2505.02(A)(2) would seem to compel a different result, we are

bound by the Supreme Court's holdings.[1]  Thus, we conclude that the court's order striking the notice of appearance was a final appealable order.

### III.  No abuse of discretion

{¶13}   In his sole assignment of error, Mr. Lam asserts that the trial court erred when it struck Ms. King's notice of appearance.  He argues (1) that he was denied due process when the court took up the matter without notice and without a hearing, (2) that in reviewing and considering information on Ms. King's website the court improperly conducted its own investigation and improperly considered hearsay, and (3) that the court abused its discretion in striking the notice of appearance and denying his right to counsel of his choice.

### A. No Denial of Due Process

{¶14}   We can easily dispose of Mr. Lam's due-process argument.  As to notice, the issues concerning Ms. King's appearance were raised in Ms. Shen's memorandum in opposition to the motion for recusal and the accompanying affidavit of Mr. Triantafilou. At  the hearing, it was Mr. Lam's own attorney, Mr. Haas, who first brought up the issue:

> My client went and hired Kathy King.  Okay?  And that is an issue that
> perhaps we ought to have dealt with before we went into this recusal
> issue.

Mr. Haas made the hiring of Ms. King part and parcel of his motion for recusal:  "And based on my arguments and my motion, the fact that Ms. King is now co-counsel, I ask this Court with all due respect to recuse herself."  Further, Mr. Haas made no objection

---

[1] In what seems to be a more statutorily consistent analysis, some districts have concluded that orders denying pro hac vice status or disqualifying counsel are final appealable orders under R.C. 2505.02(B)(4),  because the orders are provisional remedies for which immediate appeal was necessary to ensure meaningful review.  *See Westfall v. Cross*, 144 Ohio App.3d 211, 759 N.E.2d 881 (7th Dist.2001); *Spitz v. St. Luke's Med. Ctr.*, 8th Dist. Cuyahoga No. 88184, 2007-Ohio-1448; *Fordeley v. Fordeley*, 11th Dist. Trumbull No. 2014-T-0079, 2015-Ohio-2610.   The Supreme Court has not weighed in on this approach.

when the court took up the matter of Ms. King's appearance. Nor has Mr. Lam demonstrated any prejudice by the court's consideration of the matter at the recusal hearing. *See Landzberg v. 10630 Berea Rd., Inc.*, 8th Dist. Cuyahoga No. 79574, 2002-Ohio-1086. Thus, we find no due-process violation.

### B. No Reversible Evidentiary Error

{¶15} We also find no merit to the argument that the court committed reversible error by referencing Ms. King's law firm's website in support of its conclusion that she lacked any significant experience in personal-injury and corporate work.

{¶16} Mr. Lam offered no objection to the court's consideration of these materials at the hearing and thus has waived all but plain error. In civil matters, "the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 679 N.E.2d 1099 (1997), syllabus.

{¶17} At issue here is the trial court's review of Ms. King's own promotional materials. The website displayed the manner in which Ms. King and her law firm chose to present her qualifications to the world. No one has asserted that what the court reviewed wasn't the law firm's website. No one has said that any of the statements contained therein are untrue. Further, because the statements on the website were Ms. King's own or her adopted statements, the usual concerns with hearsay evidence were not present. *Compare* Evid.R. 801(D)(2).

{¶18} We hardly think that a review of Ms. King's own statements about her qualifications "seriously affected the basic fairness, integrity, or public reputation of the judicial process." Therefore, we find no plain error.

## C. No Abuse of Discretion

{¶19}   Finally, Mr. Lam argues that the court abused its discretion in striking the notice of appearance.  The right to counsel of one's own choosing is a substantial right. *Russell*, 15 Ohio St.3d at 39, 472 N.E.2d 695.  Nonetheless, this right is balanced with the court's "inherent power to regulate the practice [of law] before it and protect the integrity of its proceedings."  *Royal Indemn. Co. v. J.C. Penney Co.*, 27 Ohio St.3d 31, 33-34, 501 N.E.2d 617 (1986).

{¶20}   This concern with the integrity of court proceedings has led courts to be particularly vigilant when confronted with the specter of a party who is attempting to game the system by retaining counsel who will force the trial judge's recusal.  *See McCuin v. Texas Power & Light Co.*, 714 F.2d 1255 (5th Cir.1983); *In re Bellsouth Corp.*, 334 F.3d 94 (11th Cir.2003); *Ex parte Thacker*, 159 So.3d 77 (Ala.Civ.App.2014); *Valley v. Phillips Cty. Election Comm.*, 357 Ark. 494, 183 S.W.3d 557 (2004); *Wisconsin v. Orville*, 313 Wis.2d 831, 756 N.E.2d 809 (2008).  "It is impermissible for parties or counsel to create an infirmity for the purpose of forcing a judge to recuse."  *Valley* at 497.

{¶21}   We review the court's decision to disqualify counsel for an abuse of discretion.  *155 N. High, Ltd. v. Cincinnati Ins. Co.*, 72 Ohio St.3d 423, 426, 650 N.E.2d 869 (1995).  In *Spitz v. St. Luke's Med. Ctr.*, 8th Dist. Cuyahoga No. 88184, 2007-Ohio-1448, ¶ 14, the court found the denial of a motion to appear pro hac vice to be within the trial court's discretion based upon "the extreme age of the case (over five years), the advanced stage of the case (just before trial), and the fact that appellants never previously represented to the court that they would need additional counsel before making [its] decision."

{¶22} Our case presents an even stronger basis for limiting the litigant's ability to select co-counsel. In reaching its conclusion, the trial court reasonably looked at the age of the case, counsel's background in the subject matter, and the indications of judge shopping. Indeed, the evidence that counsel had been hired to engineer Judge Ghiz's recusal was completely uncontroverted and, by itself, more than sufficient to justify the trial court's action. Because we find nothing "unreasonable, arbitrary or unconscionable" about the trial court's decision, we conclude that the court did not abuse its discretion. *See Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶23} The sole assignment of error is overruled, and we therefore affirm the judgment of the trial court.

Judgment affirmed.

**HENDON, P.J.,** concurs separately.
**FISCHER, J.,** concurs in judgment only.

**HENDON, P.J., concurring separately.**

{¶24} I concur in the opinion of the court because I believe the assigned judge had the authority to regulate the proceedings in his or her courtroom.

Please note:

The court has recorded its own entry on the date of the release of this opinion.

9