[Cite as *State v. Page*, 2020-Ohio-816.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 19AP-346 |
| v. | : | (C.P.C. No. 18CR-0626) |
| Nagui Page, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on March 5, 2020

**On brief:** *Ron O'Brien,* Prosecuting Attorney, *Steven L. Taylor,* and *Sheryl L. Prichard,* for appellee. **Argued:** *Sheryl L. Prichard.*

**On brief:** *Gerald G. Simmons,* for appellant. **Argued:** *Gerald G. Simmons.*

APPEAL from the Franklin County Court of Common Pleas

NELSON, J.

{¶ 1} Nagui Page stands charged in the Franklin County Court of Common Pleas with felonious assault (a second-degree felony), abduction (a third-degree felony), and violating a protective order (a first-degree misdemeanor). With that case pending, he seeks here to pursue an appeal from various trial court rulings that to this point have capped public funding at $1,500 for a consulting pathologist who is a potential defense rebuttal witness. Because the trial court has not issued a final appealable order, we lack jurisdiction over the case and will grant the state's motion to dismiss the appeal.

{¶ 2} The record provides some limited context. Concerned that the state proposes to call a police officer to testify (in conjunction with the observations of another witness) to certain physical indicia of strangulation on the strength of concepts imparted at a law enforcement seminar, Mr. Page filed two motions in limine. He sought "to prohibit the testimony of any member of the Columbus Police Department from offering a medical or otherwise 'expert' opinion that the prosecuting witness * * * was strangled or choked * * * on or about January 29, 2018," October 23, 2018 Motion in Limine, and "to disqualify the State's expert police witnesses from testifying at the trial * * * concerning the cause and extent of the injuries sustained by the alleged victim," October 24, 2018 Motion in Limine 2. His point essentially was that such purported expert testimony on the basis of limited training would rely on junk science outside the standards of admissibility sanctioned in *State v. Nemeth*, 82 Ohio St.3d 202 (1998). Motion in Limine 2 at 2-3.

{¶ 3} Mr. Page says that the trial court addressed this issue at what he variously has termed a "hearing" and a "pre-trial" on December 3, 2018. *Compare* August 14, 2019 Amended Brief of Defendant-Appellant Page at 7 *with* December 5, 2018 Motion to Continue Trial. We find no transcript of that event in the record. Nor do we find any entry from the trial court making any preliminary ruling on the motions in limine. Rather, what we have is Mr. Page's representations that the court indicated that a Detective Ketcham "may offer his layman's opinion per Ohio Evidence Rule 701," *see* Motion to Continue Trial, and that the court further "suggested the parameters he would allow," *see* Amended Brief of Defendant-Appellant Page at 7. Given Mr. Page's references to Evidence Rule 701 (concerning "[o]pinion testimony by lay witnesses"), we gather that the court was not inclined to deem the Detective any sort of medical expert in accordance with Evidence Rule 702, but again we do not have a record of the court's preliminary thinking on the matter,

nor do we know the precise contours of what sorts of testimony the court "suggested" it might allow.

{¶ 4}    The following month, and with a new judge installed on the trial court bench, Mr. Page requested authorization and funding to hire Dr. Daniel Spitz as an expert "willing to consult with the defense in rebuttal of testimony from Detective Ketcham, up to and perhaps including live testimony." January 11, 2019 Motion for Appointment of Forensic Pathology Consulting Expert at 1. That motion advised the court that "a hearing was held by the [predecessor judge], allowing Sgt. Ketcham to testify with limiting conditions"; it further noted that defense objections to the Detective's testimony would be raised at trial and that "these issues must still be dealt with by [the] successor Judge." *Id.* The trial court on January 14, 2019 signed a "Proposed Order" authorizing payment to Dr. Spitz of "up to $1,500 as Consulting Forensic Pathologist" and noting that the defense could seek additional amounts were that sum to "become exhausted."

{¶ 5}    On March 13, 2019, after Mr. Page had posted bond, the trial court issued an "Entry Denying Additional Fees for Expert Witness," stating that "[a]s the defendant is no longer indigent no further funds will be approved for the defense expert. Court appointed funds for the Forensic Pathology Consulting Expert will be capped at $1,500." Mr. Page then filed a Successive Motion for Approval of Defense Expert Funding, "renew[ing] his prayer for public funding," reciting that he had requested the assistance of Dr. Spitz "in rebuttal of the State's intended witness * * * Detective * * * Ketcham," and stating that the defense had "received this Court's approval for the employment of Dr. Spitz as either a Consulting Expert or a Testifying Expert, dependent upon whether defense counsel decided to call him as a witness." April 28, 2019 Successive Motion at 1. Finding the motion "not well taken," the trial court denied it by Decision and Entry of May 28, 2019.

{¶ 6}   In his May 29, 2019 Notice of Appeal to us, Mr. Page purports to appeal "from the March 13, 2019 and the May 28, 2019, denial of expert funding as prayed for." We observe first that had the March 13, 2019 entry actually been a final appealable order, Mr. Page would have needed to file his notice of appeal "within 30 days of that entry." Appellate Rule 4(A). And his failure to have done so might have raised questions about whether principles of res judicata precluded an appeal from the second entry as made in keeping with the first. For purposes for final appealable order analysis (and like Mr. Page, apparently), we find no significant distinction between the first order and the second. But because neither is a final appealable order, principles of res judicata do not come into play at this juncture.

{¶ 7}   Mr. Page himself has suspected as much. On the same day that he filed his notice of appeal in this case, he also initiated a new case here seeking a writ of mandamus to compel the trial court to provide "adequate funding" to enable him "to rebut a so-called expert[sic]." Petition for a Writ of Mandamus as filed in case number 19AP-347 at 4, 6; *see also* December 8, 2019 Relator's Memorandum Contra Respondent's Motion to Dismiss [Petition in case number 19AP-000347] at 2 (arguing need for "a state paid expert to rebut an announced state lay expert [sic]"). Mr. Page's Petition contends that "he cannot at this stage know if this Court will honor [his] appeal as a final appealable order," and emphasizes his view that "if this Court dismisses this appeal then the writ herein prayed for is his only remedy." Petition for Writ of Mandamus at 5. Concern that his appeal is not from any final appealable order is well founded. (We do not address his mandamus petition here because that separate case has not been assigned or argued to this panel and has been referred to a magistrate.)

{¶ 8}  Ohio's Constitution specifies that courts of appeals generally "shall have such jurisdiction as may be provided by law to review and affirm, modify, or reverse judgments or final orders of the courts of record inferior to the court of appeals within the district." Ohio Constitution, Article IV, Section 3(B)(2).  That is a constitutional check on our authority:  "If a lower court's order is not final, then an appellate court does not have jurisdiction to review the matter and the appeal must be dismissed."  *State v. Harvey*, 10th Dist. No. 19AP-165, 2019-Ohio-4022, ¶ 8, citing *Gen. Acc. Ins. Co. v. Ins. Co. of N. Am.*, 44 Ohio St.3d 17, 20 (1989).  And R.C. 2505.02 provides the law as to what is (and therefore what is not) a "final order."  That definition includes, as conceivably relevant here:

> (1)  An order that affects a substantial right in an action that in effect determines the action and prevents a judgment;
>
> (2)  An order that affects a substantial right made in a special proceeding * * * ; [or]
>
> (4) An order that grants or denies a provisional remedy and to which both of the following apply:
>
>  (a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.
>
>  (b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action.

R.C. 2505.02(B)(1), (2) and (4).

{¶ 9}  Mr. Page appears perhaps to argue in his brief opposing the state's motion to dismiss his appeal that the trial court's entries could qualify as final orders under the (B)(2) "special proceeding" rubric, *see* Appellant's Response to Appellee's Motion to Dismiss at 4 (discussing *Amato v. General Motors*, 67 Ohio St.2d 253 (1981), *overruled by Polikoff v. Adam*, 67 Ohio St.3d 100 (1993)).  In the interest of completeness, however, we assess them

with reference to each of the three subsections quoted above and in light of the fair trial considerations that Mr. Page urges. We also note that R.C. 2505.02 defines "substantial right" in this context to mean "a right that the United States Constitution, the Ohio Constitution, a statute, the common law, or a rule of procedure entitles a person to enforce or protect"; it now defines "special proceeding" to mean "an action or proceeding that is specially created by statute and that prior to 1853 was not denoted as an action at law or a suit in equity"; and it defines "provisional remedy" to mean "a proceeding ancillary to an action, including, but not limited to, a proceeding for a preliminary injunction, attachment, discovery of privileged matter, suppression of evidence," or certain showings or findings made pursuant to various environmental claims. R.C. 2505.02(A).

{¶ 10} We begin our assessment by observing that in certain situations, " 'due process may require that a criminal defendant be provided * * * expert assistance when necessary to present an adequate defense.' " *State v. Brady*, 119 Ohio St.3d 375, 2008-Ohio-4493, ¶ 21, quoting *State v. Mason*, 82 Ohio St.3d 144, 149 (1998). But at this stage of the proceedings—without having any record of what evidence will be advanced against Mr. Page, or what latitude, if any, the court on further reflection will extend to the proposed testimony of Detective Ketcham, or whether Mr. Page will decide that any rebuttal testimony to that hypothetical, prospective testimony is warranted—we cannot say that funding (or additional funding) for Dr. Spitz "in effect determines the action" against Mr. Page. Nor do the entries at issue prevent a judgment. They are not final orders under R.C. 2505.02(B)(1).

{¶ 11} In this regard, we note further that the trial court has not yet issued any entries granting or denying in whole or in part Mr. Page's motions in limine seeking to restrict the testimony to which he proposes perhaps to respond by calling Dr. Spitz in

rebuttal. And a ruling on a motion in limine is itself "not a final appealable order" precisely because it is provisional and subject to change with the circumstances: it is only "a pretrial, preliminary, anticipatory ruling," and "the trial court is certainly at liberty to again consider the admissibility of the disputed evidence in its actual context." *Columbus v. Zimmerman*, 10th Dist. No. 14AP-963, 2015-Ohio-3488, ¶ 9, citing among other cases *Gable v. Gates Mills*, 103 Ohio St.3d 449, 2004-Ohio-5719 (which emphasizes at ¶ 34 that "Ohio law is clear * * * that a ruling on a motion in limine may not be appealed").

{¶ 12} Nor were the entries on funding "made in a special proceeding": rather, they issued in the course of a criminal case of the sort long established at law and not involving a special proceeding. *See, e.g., Polikoff v. Adam*, 67 Ohio St.3d 100, 107 (1993) (as then largely incorporated into statute: "The underlying action can be distinguished from a special proceeding in that it provides for an adversarial hearing on the issues of fact and law which arise from the pleadings and which will result in a judgment for the prevailing party. * * * * [W]e determine that orders that are entered in actions that were recognized at common law or in equity and were not specially created by statute are not orders entered in special proceedings pursuant to R.C. 2505.02. *Amato* therefore is overruled."); *State v. Smith*, 7th Dist. No. 17 MA 0171, 2018-Ohio-3905 (entry denying motion to dismiss on speedy trial grounds is not a final appealable order; no substantial right is "affected" because the right "will be enforced upon any appeal following final disposition of the criminal proceedings," and further "a criminal proceeding is not a 'special proceeding' ") (citations omitted); *compare LaSalle Inst. Realty Advisors v. Nantucket on Montgomery Rd., Ltd.*, 10th Dist. No. 11AP-402, 2011-Ohio-4080, ¶ 9 ("A breach of contract claim is not a 'special proceeding' ") (citations omitted). The entries are not final orders under R.C. 2505.02(B)(2).

{¶ 13} We come, then, to R.C. 2505.02(B)(4). To be a final appealable order under that subsection: "(1) the order must either grant or deny relief sought in a certain type of proceeding – a proceeding that the General Assembly calls a 'provisional remedy,' (2) the order must both determine the action with respect to the provisional remedy and prevent a judgment if favor of the appealing party with respect to the provisional remedy, and (3) the reviewing court must decide that the party appealing from the order would not be afforded a meaningful or effective remedy by an appeal following final judgment." *State v. Muncie*, 91 Ohio St.3d 440, 446 (2001).

{¶ 14} Even were we to decide that a determination on funding for a defense expert comes as an ancillary proceeding (and most discovery orders, for example, do not fall within that category, *see, e.g., Myers v. Toledo*, 110 Ohio St.3d 218, 2006-Ohio-4353, ¶ 34-35 [request for physical examination under Civ.R. 35(A) is not a provisional remedy and decision is not a final appealable order]), neither of the other two required (B)(4) prongs would be met. First, as Mr. Page's own "Successive Motion" for funding approval demonstrates, nothing about the trial court's entries to date precludes him from seeking to revisit the issue with the trial court if and as appropriate. Perhaps Mr. Page is better positioned now, for example, to provide new or changed information with regard to his indigency status. Or perhaps after the trial court hears at trial—if it even does—from Detective Ketcham and makes whatever final rulings it makes regarding whatever his proffered testimony may prove to be, the trial court will have additional information to take into account in considering whether to permit payment for rebuttal testimony by Dr. Spitz should Mr. Page want to call him at that time. The state acknowledges that the trial court's funding entries to date are not preclusive: "Appellant also could ask for a hearing to demonstrate a specific need for funds by offering specifics as to the testimony or advice he

further seeks from an expert." Motion to Dismiss Appeal at 6. The requisite of R.C. 2505.02(B)(4)(a) that the order "prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy" sought (if such it be) is not satisfied.

{¶ 15} Nor is the third prong of the (B)(4) subsection satisfied: Should he be convicted, Mr. Page will have a "meaningful or effective remedy following final judgment," through pursuit of an appeal. We understand his argument that a finding of guilt on the felonious assault with which he is charged would carry a presumption of prison, that such a conviction likely also would result in revocation of his community control status in Fairfield County, and that time while incarcerated pending an appeal cannot be reclaimed. *See* Appellant's Response to Appellee's Motion to Dismiss Appeal at 5-6. But that argument proves too much, and Mr. Page himself recognizes that denials of motions in limine (improvidently allowing adverse testimony that might lead to conviction) or of motions to suppress (incorrectly allowing introduction of evidence that might contribute to a finding of guilt) are not final appealable orders. *See id.* at 2. Neither are denials of motions to dismiss for speedy trial violations. *See, e.g., State v. Hare*, 10th Dist. No. 88AP-683, 1989 Ohio App. Lexis 2709 (pre-amendment statute); *State v. Payne*, 4th Dist. No. 16CA3, 2016-Ohio-1411 ("six other appellate districts have reviewed interlocutory orders denying a motion to dismiss on speedy trial grounds and have held that these orders are not final appealable orders"; same result).

{¶ 16} So, for example, in *State v. Ricciardi*, 135 Ohio App.3d 155, 159 (7th Dist.1999), the Seventh District Court of Appeals found that the possibility "that appellant would have served time in prison prior to successfully procuring a reversal of his conviction does not amount to the denial of a meaningful or effective remedy." Even where time has been served, the court reasoned, reversals of criminal convictions matter to the defendant

and still provide a "meaningful" remedy for the conviction. *Id. Compare, e.g., State v. Collins*, 24 Ohio St.2d 107, 100 (1970) (pre-amendment; distinguishing state's ability to appeal from suppression grant from position of defendant who, "if his motion to suppress is overruled, may challenge the correctness of that order in appellate proceedings following the conviction"); *State v. Benson*, 11th Dist. No. 2019-A-0080, 2019-Ohio-5050, ¶ 14, 17 (appeal dismissed; "[a]n order denying a motion to suppress has been held not to be a final appealable order") (citations omitted).

{¶ 17} *State v. Powell*, 6th Dist. No. L-18-1194, 2019-Ohio-4286, underscores the point. There, a divided panel of the Sixth District Court of Appeals found that an order denying a capital defendant expert funding in his postconviction relief proceeding was a final appealable order only because the procedures specified in Criminal Rule 42(E) for "the appointment of experts in all capital cases and in post-conviction review of a capital case" themselves constitute an "ancillary proceeding," *and* because "[n]either the trial courts nor the appellate courts can stay a defendant's death sentence while the review of the petition for postconviction relief is pending. Therefore, time is of the essence as a defendant could be deprived of his life while the petition is being determined by the trial and appellate courts." 2019-Ohio-4286 at ¶ 44 (adding that "[f]or most postconviction relief petitions, the length of time to wait for a final adjudication on the merits of the petition, and the time for an appellate court to review the trial court's decision, would not be enough for a finding" necessitating immediate judicial review). That ruling was limited to and compelled by "the unique nature of a capital proceeding * * * and the corresponding risk that a defendant * * * may be wrongly executed while postconviction proceedings remain pending." *Id.* at ¶ 46 (again restricting ruling to denial under capital expert Criminal Rule 42(E)). Even that context was not enough for the dissent, which found that because the capital Rule 42(E)

proceeding sounded in discovery but did not relate to the discovery of a privileged matter, it was not a provisional remedy, and which concluded further that contrary to the majority's distinction based on the trial and appellate court's inability to stay a death sentence pending post-conviction review, the matter was susceptible of meaningful appellate review. *Id.* at ¶ 73-75 (Zmuda, J., dissenting in part).

{¶ 18} The Eleventh District Court of Appeals directly addressed the issue, under an earlier formulation of the statute, in *State v. Wolf*, 71 Ohio App.3d 740 (1991). The court of appeals in that murder case held squarely that "the [trial] court's refusal to permit expert assistance [at state expense] is not a final appealable order." *Id.* at 748. *Wolf* reasoned that: "There is no denial of substantial right, nor is it impracticable to wait until final adjudication. R.C. 2505.02. A request for expert assistance, made in a more specific manner, may also be refiled at any time prior to or during the course of the trial. Appellant will not lose his right to review of the issue. Should an abuse of discretion and prejudice be demonstrated, defendant's conviction can be reversed." *Id.* (citation omitted).

{¶ 19} That ruling accords with the Second District Court of Appeals' earlier, pre-amendment decision in *State v. Mays*, 2d Dist. No. 1884, 1984 Ohio App. Lexis 9802, which dismissed as "not a final appealable order" an attempted appeal from the trial court's pre-trial refusal to fund a defense handwriting expert: "we note that if appellant is brought to trial and ultimately convicted as charged, nothing would impair the 'practicability' of an appeal following such a final order of conviction. A subsequent appeal, if desired, could squarely present the constitutional issue, if any, in terms of its specific prejudice to appellant. At that point, an appeal would remain an efficacious and practicable option."

{¶ 20} Although *Wolf* and *Mays* preceded the specific formulation of current R.C. 2505.02(B)(4), both are instructive in assessing the availability of "a meaningful or effective

remedy by an appeal following final judgment as to all proceedings."  Should (a) Mr. Page's case proceed to trial, with (b) Detective Ketcham being permitted to testify as to matters outside of his direct observation and within the scope of Dr. Spitz's expertise, and (c) Mr. Page then seeking to call his expert, and (d) the trial court refusing to authorize that defense hire, and should (e) Mr. Page then be convicted of the charge or charges to which Dr. Spitz's testimony would arguably relate, Mr. Page would have been able to preserve his right to a meaningful appeal.   We find that the independently necessary requirements of R.C. 2505.02(B)(4)(b), like those of R.C. 2505.02(B)(4)(a), are not met.

{¶ 21}  At this juncture, Mr. Page has not appealed from a final appealable order. "An appellate court can review only final orders, and without a final order, an appellate court has no jurisdiction." *Supportive Solutions, L.L.C. v. Electronic Classroom of Tomorrow*, 137 Ohio St.3d 23, 2013-Ohio-2410, ¶10. We grant the state's motion and dismiss this appeal for want of jurisdiction.

*Motion to dismiss granted; appeal dismissed.*

LUPER SCHUSTER and BRUNNER, JJ., concur.

_____